UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF MICHIGAN,<br><br>Plaintiff,<br><br>v.<br><br>LEICA MICROSYSTEMS INC.,<br><br>Defendant. | Case No. 19-cv-07470-LHK (VKD)<br><br>**ORDER RE PROTECTIVE ORDER**<br>Re: Dkt. No. 48 |

Plaintiff The Regents of the University of Michigan ("UM") and defendant Leica Microsystems Inc. ("Leica") ask the Court to resolve their dispute concerning the terms of a proposed protective order that will govern the exchange of disclosures and discovery in this action. Dkt. No. 48. The parties represent that they have agreed to most of the terms of a proposed order based on this District's model protective order for patent cases.[1] Their dispute concerns whether in-house counsel for a Receiving Party may have access to discovery material designated "Highly Confidential – Attorneys Eyes Only" ("HC/AEO") by the Producing Party, as permitted by optional section 7.3(b) of the model order. In addition, the parties also dispute whether the UM's proposed designated in-house counsel, Jason Garr, meets the requirements of section 7.3(b) or should otherwise have access to Leica's HC/AEO discovery material.

For the reasons explained below, the Court denies without prejudice the parties' competing

---

[1] The parties refer to the Patent Local Rule 2-2 Interim Model Protective Order, which governs unless and until the Court enters a different protective order, and also to the Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, which is substantially the same as the interim order except that some provisions are designated "optional."

United States District Court
Northern District of California

requests for entry of their respective protective orders.

## I. BACKGROUND

In this action, UM asserts that Leica infringes one of UM's patents relating to fluorescence detection of tagged molecules in a sample of material. Dkt. No. 1. Among other things, the complaint recites that Leica declined UM's pre-suit invitation to take a license to the patent. *Id.* ¶¶ 22, 47, 49-52.

UM argues that the protective order in this case should include optional section 7.3(b) of the model order, which provides that a Receiving Party may disclose material designated HC/AEO to "[n]ot more than one Designated House Counsel of the Receiving Party (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the 'Acknowledgment and Agreement to Be Bound' (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed."[2] Dkt. No. 48-1 at 10. UM proposes to designate Jason Garr as its Designated House Counsel under this provision. Dkt. No. 48 at 2 & n.1. According to UM, Mr. Garr is an Associate General Counsel for UM who advises UM's Office of Technology Transfer on licensing and litigation matters. *Id.* UM says that Mr. Garr's role is "exclusively legal" and that he does not provide business advice and is not involved in competitive decision-making. *Id.* UM represents that Mr. Garr did not participate in any pre-suit discussions with Leica. *Id.* at 4.

Leica argues that the protective order should not permit in-house counsel for either party to view all HC/AEO material produced in discovery. *Id.* at 5. In addition, Leica argues that considering Mr. Garr's responsibilities in advising UM's Office of Technology Transfer, disclosure of Leica's HC/AEO material to him would risk misuse of that information for competitive purposes. *Id.* at 7. Leica points out that UM's website identifies Mr. Garr as practicing in the area of intellectual property "prosecution" as well as licensing and litigation. *See* https://ogc.umich.edu/attorneys-staff/jason-garr/. Leica also says that Mr. Garr is a potential fact

---

[2] Proposed section 7.4(a)(1) requires a Receiving Party to provide certain information about its Designated House Counsel to the Producing Party in advance of disclosing HC/AEO material to such in-house counsel.

witness with respect to UM's willful infringement allegations. *Id.* at 7-8.

## II. DISCUSSION

In the Ninth Circuit, material produced in pretrial discovery is presumptively public. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 425-26 (9th Cir. 2011). Rule 26(c) of the Federal Rules of Civil Procedure permits a district court to protect parties from "undue burden or expense" in discovery by ordering that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c). Ordinarily, the party resisting disclosure of its information must show good cause for entry of a protective order. *In re Roman Catholic Archbishop*, 661 F.3d at 424, 426.

Here, the parties ask the Court to resolve a dispute regarding the terms of an umbrella protective order intended to govern the handling of discovery material to be produced over the course of the action. The parties have stipulated to most of the terms of the protective order, including a two-tier designation scheme that gives outside counsel (and specified others) access to material designated HC/AEO, but gives a broader range of people, including certain party employees, access to material designated "Confidential." *See* Sections 7.2(a) & (b), 7.3(a). The agreed portions of the proposed protective order also include a mechanism for challenging confidentiality designations one party believes are too restrictive after the designation is made, reflecting the prospective nature of the proposed order. *See* Section 6.

The disputed provision, section 7.3(b) of the model order, if adopted, would apply to all material the parties may designate as HC/AEO during discovery. The parties agree that material may only be designated HC/AEO if it would qualify for protection under Rule 26(c) and if its "disclosure . . . to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means." *See* Section 2.8.

*U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed. Cir. 1984) and *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) are the leading cases on the propriety of restricting in-house counsel's access to an adversary's confidential discovery material. Both cases caution against protective orders that arbitrarily distinguish between outside counsel and in-house

3

counsel; they require instead that a district court evaluate the specific factual circumstances that may or may not warrant treating outside counsel and in-house counsel differently. *See U.S. Steel*, 730 F.2d at 1468; *Brown Bag Software*, 960 F.2d at 1470-71. This evaluation requires the Court to consider the material to be disclosed and the role and responsibilities of the in-house counsel to whom disclosure is proposed. *See Brown Bag Software*, 960 F.2d at 1470-71 (describing necessity of specific factual inquiry).

The Court is not able to resolve the parties' dispute on the record presented. At this point, the Court is not asked to make specific findings as to whether any particular discovery material should or should not be disclosed to in-house counsel who meet the requirements of section 7.3(b). In fact, the parties' joint submission reflects disagreement (or perhaps uncertainty) about the kinds of discovery material that may be designated HC/AEO by each side. As for Mr. Garr specifically, the parties disagree about the nature of his role and responsibilities as in-house counsel for UM. Neither party presents evidence on this point. UM describes Mr. Garr's responsibilities at a high level of generality in a footnote, and Leica disputes UM's description by reference to information posted on UM's website. These circumstances distinguish this dispute from a number of the cases on which the parties rely in which district courts have exercised their discretion to permit or bar in-house counsel's access to an adversary's confidential discovery material based on a more fully developed factual record.

Given the intended purpose of the proposed protective order—i.e. to facilitate both parties' production and disclosure of confidential discovery material on a prospective basis—the Court disagrees with UM's suggestion that the matter may be resolved by simply finding that Leica, the party seeking more restrictive protections, has failed to meet its burden to show good cause to exclude in-house counsel of either party from access to the Producing Party's HC/AEO discovery material. The Court requires a more specific showing from both parties in order to resolve this dispute.

The Court can provide guidance on one point based on the parties' joint submission and the present record. UM argues that because UM is a university and does not design, make or sell any products in competition with Leica, none of its in-house counsel are engaged in "competitive

4

decision-making" and therefore should be permitted access to Leica's confidential discovery material. *See* Dkt. No. 48 at 3. This argument is unpersuasive for two reasons. First, although many of the cases that address whether in-house counsel should have access to confidential discovery material involve disputes between competitors, neither *U.S. Steel* nor *Brown Bag Software* holds that restrictions on in-house counsel's access are *limited* to circumstances whether the parties compete and in-house counsel is involved in competitive decision-making. To the contrary, both cases emphasize the broader point that the district court must examine the particular factual circumstances and not make arbitrary distinctions based on assumptions. UM's proposed section 7.3(b) relies exclusively on whether in-house counsel engages in competitive decision-making to distinguish between in-house counsel who are and are not eligible to view HC/AEO discovery material. But that single criterion (at least as construed by UM) is not well-suited to this case and does not assist the Court in deciding whether particular in-house counsel should be allowed to view particular discovery material or whether permitting such access will subject a party to undue burden or expense.

Second, while UM and Leica are not competitors in the same way the parties in *U.S. Steel* and *Brown Bag Software* were, they may well compete on other relevant dimensions. For example, the complaint suggests that both parties have prosecuted patents in the fluorescence detection field. *See* Dkt. No. 1, ¶ 48.[3] Although the record is not developed on this point as to UM and Leica, universities can and do compete with other universities, research institutions, and private entities for such rights. *See*, *e.g*., https://synbiobeta.com/with-the-recent-patent-news-who-owns-crispr-now/ (describing competition for patent rights to CRISPR-related technology). Moreover, to the extent one of UM's objectives is to license its inventions to entities like Leica and Leica's direct competitors, Mr. Garr's role in advising UM's Office of Technology Transfer on such matters may well place him in the difficult position of avoiding inadvertent use or disclosure of Leica's confidential information in the course of fulfilling his responsibilities to UM in a manner similar to circumstance the Ninth Circuit considered problematic in *Brown Bag*

---

[3] The parties agree that if in-house counsel is given access to HC/AEO discovery material a patent prosecution bar is appropriate. Dkt. No. 48 at 2.

*Software.*

In sum, whether particular in-house counsel should be barred from accessing particular discovery material does not depend on whether in-house counsel's responsibilities fit a narrow definition of competitive decision-making arising in a context where the parties are direct competitors for commercial products or services. The analysis is more nuanced and case-specific.

## III. CONCLUSION

The Court denies, without prejudice, the parties' competing requests for entry of their respective protective orders. The parties may re-submit their dispute to the Court together with supporting material that addresses the concerns outlined above. The parties' joint submission should comply with the discovery dispute resolution procedures in Judge DeMarchi's Standing Order for Civil Cases, except that the parties may also submit evidence or other material that they believe is necessary for the Court's resolution of their dispute.

Alternatively, because it appears that there remains room for agreement, the parties may wish to confer further about categories of HC/AEO information that may be disclosed to in-house counsel. *See* Dkt. No. 48 at 6 (Leica suggesting that it may be willing to disclose some financial information to in-house counsel for UM). If the parties do reach agreement, they may submit a stipulated proposed protective order for the Court's consideration.

**IT IS SO ORDERED.**

Dated: April 10, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge