UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF MICHIGAN,<br><br>Plaintiff,<br><br>v.<br><br>LEICA MICROSYSTEMS INC.,<br><br>Defendant. | Case No. 19-CV-07470-LHK<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

The Regents of the University of Michigan ("Michigan") bring this action for patent infringement against Leica Microsystems Inc. ("Leica"). ECF No. 1 ("Compl."). Michigan alleges that Leica infringes U.S. Patent No. 7,277,169 (the "'169 Patent") either literally or under the doctrine of equivalents. *See id.* ¶¶ 23–53. Before the Court is Leica's motion to dismiss for failure to state a claim. ECF No. 17. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Leica's motion to dismiss.

I.   **BACKGROUND**

   A. **Factual Background**

      1. **The Parties**

Michigan is a "constitutional corporation of the State of Michigan" primarily located in Ann Arbor, Michigan. Compl. ¶ 2. Michigan is the assignee and sole owner of the '169 Patent. *Id.* ¶ 9. Leica is a Delaware corporation with its primary place of business in San Francisco, California. *Id.* ¶ 3.

### 2. The '169 Patent

The '169 Patent is titled "Whole Spectrum Fluorescence Detection with Ultrafast White Light Excitation." ECF No. 1-1 ("'169 Patent"). The '169 Patent was filed on February 16, 2006 and issued on October 2, 2007. *See id.*

The '169 Patent relates to "fluorescence measurements and, more particularly, relates to a method and apparatus for detecting multiple fluorophores using an ultrafast super continuum light source for excitation." *Id.* at col. 1:23–25. Specifically, the '169 Patent describes a novel fluorescence detection system that "employ[s] a single laser source to simultaneously excite a plurality of dye molecules and collect the entire spectrum [of light] ranging from visible to near infrared emitted therefrom." *Id.* at col. 3:25–28. The fluorescence detection system of the '169 Patent features two main components, "a single source white light generation system" and a "time-resolving detector." *Id.* at col. 7:46–55.

Moreover, the '169 Patent states that it teaches "a unique approach for fluorescence excitation and detection in contrast to conventional fluorescence measurements." *Id.* at col. 5:53–55. The '169 Patent highlights that "conventional fluorescence" techniques use "a single excitation wavelength, such as a laser source," which can only "excite[] and thus detect[]" a "limited number of fluorophores that have absorption [wavelengths] matched with the excitation wavelength." *Id.* at col. 2:23–25. In contrast, the '169 Patent teaches the use of "a single laser source" which generates a "white light pulse" that comprises the entire spectrum of visible light and that can "simultaneously excite a plurality of dye molecules and collect the entire spectrum ranging from visible to near infrared emitted therefrom." *Id.* at col. 3:25–28. Accordingly, "[u]nlike prior art systems, the usefulness of the [] teachings [of the '169 Patent] is not dependent upon the use of band pass filters and/or dichroic mirrors and, thus, the present teachings [of the

'169 Patent] provide a significantly simplified configuration." *Id.* at col. 3:28–32.

Michigan asserts "at least claim 1 of the '169 Patent." Compl. ¶ 26. Claim 1 of the '169 Patent recites:

> 1. A fluorescence detection system for testing a sample, said sample having a plurality of fluorophores, said fluorescence detection system comprising:
>
> a single-source white light generation system outputting a supercontinuum white light pulse comprising an entire spectrum of white light, said supercontinuum white light pulse exciting the plurality of fluorophores of the sample to emit fluorescence; and
>
> a time-resolving detector receiving said fluorescence and at least a portion of said supercontinuum white light pulse, said time-resolving detector separating said fluorescence from said portion of said supercontinuum white light pulse.

'169 Patent col. 7:43–55.

### 3. Leica's Accused Products

Michigan alleges that Leica's infringing products are "each and every model of Leica's SP8 confocal microscope family that employs a white light laser, including, for example, without limitation, the TCS SP8 X and TCS SP8 microscopes" (the "SP8 microscopes"). Compl. ¶ 25. Michigan alleges that the SP8 microscopes are fluorescence detection systems that allow for exciting a fluorophore in a sample and then detecting the fluorescence the sample emits. *Id.* ¶¶ 28–31; Mot. at 13–14. The SP8 microscopes "employ an innovative Leica White Light Laser that is a single device that produces a continuous spectral output between the wavelengths of 470 and 670 nanometers" and that "covers the full spectrum of visible light." Compl. ¶ 28 (quotation marks omitted). Using this light source, the SP8 microscopes function "[b]y tuning both excitation and detection [wavelengths to obtain] complete excitation and emission spectra." *Id.* ¶ 32. This tuning process also features a "beam splitter," which splits the initial light from the light source into "up to eight discrete wavelengths" that ultimately contact the sample. ECF No. 17 at 13. Further, the SP8 microscopes feature a detector that observes the fluorescence emitted from the sample and also "[a]n adjustable time gate" that can function to remove "non-wanted fluorescence" by "switch[ing] off the data collection." Compl. ¶¶ 35–36.

### B. Procedural History

On November 13, 2019, Michigan filed its complaint for patent infringement against Leica. *See* Compl. Michigan alleges that Leica directly infringes the '169 Patent "literally and/or under the doctrine of equivalents," and also indirectly infringes through induced and contributory infringement. *Id.* ¶¶ 25, 40–45. Michigan further alleges that Leica's infringement merits enhanced damages because Leica's infringement of the '169 Patent is willful. *Id.* ¶¶ 46–52.

On January 15, 2020, Leica filed the present motion to dismiss Michigan's complaint for failure to state a claim. ECF No. 17 ("Mot."). In conjunction with Leica's motion to dismiss, Leica also filed a request that the Court take judicial notice of the prosecution history of the '169 Patent. ECF No. 17-2. On March 5, 2020, Michigan filed an opposition to Leica's motion to dismiss. ECF No. 41 ("Opp'n"). On March 19, 2020, Leica filed a reply. ECF No. 45 ("Reply"). On March 26, 2020, Michigan filed an objection to evidence contained in Leica's reply brief. ECF No. 46. On April 1, 2020, Leica filed a response to Michigan's objection, ECF No. 49, as well as a motion for the Court to review Michigan's objection, ECF No. 50.

## II.   LEGAL STANDARD

### A. Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Generally, motions to dismiss for failure to state a claim raise "purely procedural question[s] not pertaining to patent law" and are therefore governed by regional circuit law. *McZeal v. Spring Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) (applying Fifth Circuit case

law and vacating dismissal of a patent infringement case).  However, where "the issue pertains to or is unique to patent law," courts follow Federal Circuit law for "both substantive and procedural issues 'intimately involved in the enforcement of the patent right.'"  *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) (citing *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855–56 (Fed. Cir. 1999)); *see, e.g.*, *Takeda Pharm. Co., Ltd. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1121 (N.D. Cal. 2014).

Accordingly, with respect to the pleading standard, the Court applies Ninth Circuit law to "accept factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Indeed, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B.  Direct Infringement**

Direct infringement occurs when an unauthorized party "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent."  35 U.S.C. § 271(a).

Infringement is a question of fact and "can be found when a defendant makes a product containing 'each and every limitation set forth in a [patent] claim.'"  *CenTrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360 (Fed. Cir. 2019) (quoting *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005)).  To sufficiently plead a claim of direct infringement under *Twombly* and *Iqbal*, "plaintiffs [must] plausibly allege that the accused product

5

practices each of the limitations found in at least one asserted claim." *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016) (collecting cases).

However, to state a claim of direct infringement, the accused products may satisfy all of a claim's limitations "either literally or under the doctrine of equivalents." *Cheese Sys. V. Tetra Pak Cheese & Powder Sys.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013). "[L]iteral infringement requires that each and every limitation set forth in a claim appear in an accused product." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1348 (Fed. Cir. 2013).

By contrast, "[i]nfringement under the doctrine of equivalents requires the patentee to prove that the accused device contains an equivalent for each limitation not literally satisfied." *Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455, 463 (Fed. Cir. 2016). "An element in the accused product is equivalent to a claimed element if the differences between the two elements are 'insubstantial' to one of ordinary skill in the art." *Id.*

Because the doctrine of equivalents is only relevant in the absence of literal infringement, courts regularly decline to consider infringement under the doctrine of equivalents where literal infringement has been found. *See, e.g.*, *Cheese Sys., Inc.*, 725 F.3d at 1349 ("This court affirms on the ground that the accused products literally infringe this element and so does not reach the alternative ground of infringement under the doctrine of equivalents."); *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) ("Because of this holding on the question of literal infringement, we need not reach Abbott's arguments concerning infringement pursuant to the doctrine of equivalents.").

**C. Indirect Infringement**

In addition to any direct infringement claim, a patentee may bring a claim for indirect infringement against a defendant under either a theory of induced infringement or contributory infringement.

Induced infringement may apply where a defendant has induced a third party to directly infringe a patent. *See* 35 U.S.C. § 271(b). "For an allegation of induced infringement to survive a

6
Case No. 19-CV-07470-LHK
ORDER DENYING MOTION TO DISMISS

1  motion to dismiss, a complaint must plead facts plausibly showing that the accused infringement
2  specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts
3  constituted infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018)
4  (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (internal
5  quotation marks omitted). Thus, for an allegation of induced infringement, the plaintiff must
6  allege that a defendant knew that another party was infringing and intended for that other party to
7  infringe. *Id.*

8  A theory of contributory infringement may apply where a defendant has contributed to a
9  third party's direct infringement. *See id.* § 271(c). Contributory infringement refers to the "core
10 notion that one who sells a component especially designed for use in a patented invention may be
11 liable as a contributory infringer, provided that the component is not a staple article of commerce
12 suitable for substantial noninfringing use." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d
13 1325, 1337 (Fed. Cir. 2008); *see also* 35 U.S.C. § 271(c). Therefore, to state a claim
14 for contributory infringement, one must plead that a party sells or offers to sell "a component of a
15 patented . . . combination, . . . or a material . . . for use in practicing a patented processing
16 constituting a material part of the invention, knowing the same to be especially made or especially
17 adapted for use in an infringement of such patent, and not a staple article or commodity of
18 commerce suitable for substantial noninfringing use." *Nalco*, 883 F.3d at 1356 (Fed. Cir. 2018)
19 (quoting 35 U.S.C. § 271(c)).

20 Under either a theory of induced infringement or contributory infringement, indirect
21 infringement requires an act of direct infringement as a predicate, and thus, there cannot be
22 indirect infringement without direct infringement. *See Limelight Networks, Inc. v. Akamai Techs.,*
23 *Inc.*, 572 U.S. 915, 920–26 (2014).

### D. Willful Infringement

25 Furthermore, a patentee can allege willful infringement and seek enhanced damages
26 pursuant to "Section 284 of the Patent Act[,] [which] provides that, in a case of infringement,
27 courts 'may increase the damages up to three times the amount found or assessed.'" *Halo Elecs.,*

*Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016) (citing 35 U.S.C. § 284). For infringement to be willful and to merit enhanced damages, an infringer must act despite a risk of infringement that was "either known or so obvious that it should have been known to the accused infringer." *Halo*, 136 S. Ct. at 1930. "Accordingly, to state a claim for willful infringement [and enhanced damages], a complaint must allege that an infringer knew of the patents and then acted or continued to act even though the infringer knew that it was infringing or that the risk of such infringement was obvious." *Corephotonics, Ltd. v. Apple, Inc.*, No. 17-CV-06457-LHK, 2018 WL 4772340, at *7 (N.D. Cal. Oct. 1, 2018) (citing *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d at 1350, 1371 (Fed. Cir. 2017)).

## III. DISCUSSION

In Leica's motion to dismiss, Leica argues that the Court should dismiss Michigan's claims for direct infringement, indirect infringement, and willful infringement. The Court first addresses Michigan's direct infringement claim, which alleges both literal infringement and infringement under the doctrine of equivalents. Next, the Court turns to Michigan's indirect infringement claim, and then finally, Michigan's claim for enhanced damages via willful infringement.[1]

### A. Direct Infringement

Leica's motion alleges that Leica's accused products, i.e., the SP8 microscopes, do not directly infringe—either literally or under the doctrine of equivalents—because the SP8 microscopes fail to satisfy the following limitation of independent claim 1: "said supercontinuum white light pulse exciting the plurality of fluorophores of the sample to emit fluorescence" (hereafter, the "supercontinuum white light limitation"). *See* Mot. at 18 (quoting '169 Patent col. 7:45–50). Leica argues, and Michigan does not dispute for purposes of this motion, that this limitation is identical or functionally identical to a limitation present in the remaining independent

---

[1] Michigan alleges willful infringement as a separate count in the Complaint, whereby Michigan asserts that all of Leica's allegedly infringing conduct, including both direct infringement and indirect infringement, was willful. *See* Compl. ¶¶ 46–52.

8

Case No. 19-CV-07470-LHK
ORDER DENYING MOTION TO DISMISS

claims of the '169 Patent.[2] *See id.* at 18; Opp'n at 1.  Moreover, Leica does not dispute that Michigan sufficiently alleges that the SP8 microscopes satisfy the remaining limitations of claim 1.  *See* Mot. at 18–23.  As such, the Court need only address the parties' dispute with regard to the supercontinuum white light limitation.  *See* Mot. at 18–23.

Below, the Court first addresses literal infringement before turning to infringement under the doctrine of equivalents.

### 1. Literal Infringement

Leica argues that the SP8 microscopes cannot satisfy the supercontinuum white light limitation in light of the limitation's plain meaning and the patent's specification and prosecution history.  *See id.*  However, Leica does not otherwise dispute that Michigan sufficiently pleads that the SP8 microscopes satisfy this limitation under Michigan's interpretation of the claim.  *See id.*  For the reasons stated below, the Court finds that Leica's motion would require the Court to construe a disputed clam term, which is inappropriate at this procedural posture.

Specifically, Leica argues that the supercontinuum white limitation, as informed by the '169 Patent's specification and prosecution history, requires that the *entirety* of the "supercontinuum white light pulse" reach and excite the fluorophores in the sample.  *See id.* at 18–21; Reply at 6–11.  Leica argues that the SP8 microscopes cannot literally infringe because the "SP8 microscopes excite fluorophores . . . with up to eight narrow-band (1 nm) discrete wavelengths" and not with the entirety of the "supercontinuum white light pulse."  Mot. at 18.

On the other hand,  Michigan argues that under the "plain meaning of the [limitation]" "[t]he claims would [] encompass Leica's purported [eight] excitation lines."  Opp'n at 4–6.  Moreover, Michigan argues that Leica mischaracterizes both the specification of the '169 Patent and the patent's prosecution history.  *Id.* at 6–14.  Michigan protests that Leica's "entire argument

---

[2] The other independent claims from the '169 Patent are claims 10 and 19.  Claim 10 recites an identical limitation as to that in claim 1.  '169 Patent col. 8:29–31.  Claim 19 features an analogous limitation that recites "said supercontinuum white light pulse exciting the first fluorophore and the second fluorophore to emit a first florescence and a second fluorescence respectively."  *Id.* at col. 9:5–8.

9

in its motion to dismiss" is an improper attempt at premature claim construction. *Id.* at 8–9.

Although Leica argues that "[n]o claim construction is needed," Reply at 2, the Court disagrees. Leica's motion to dismiss would require the Court to decide whether the supercontinuum white light limitation requires all or only a portion of the "supercontinuum white light pulse" to physically reach and excite the fluorophores in the sample. *See* Mot. at 18; Opp'n at 9. Leica's argument for dismissal is fundamentally an issue of claim construction. *See Clearstream Wastewater Sys. V. Hydro-Action*, 206 F.3d 1440, 1444 (Fed. Cir. 2000) ("[C]laim construction [is where] the scope and meaning of the patent claims asserted are determined."); *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope."). Thus, unsurprisingly, both parties rely on the claim language, the specification, and the prosecution history of the '169 Patent to justify their respective interpretations of the supercontinuum white light limitation and argue whether this construction could encompass Leica's SP8 microscopes. *See* Mot. at 19–20; Opp'n at 4–8; Reply at 6–10.

These arguments, and this type of evidence, are more appropriately presented during claim construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–19 (Fed. Cir. 2005) (describing claim construction as heavily dependent on "intrinsic evidence," which includes the claims themselves, the patent's specification, and the patent's prosecution history). By contrast, it is inappropriate to resolve a claim construction dispute on a motion to dismiss for failure to state a claim of infringement for at least three reasons. First, this District's Patent Local Rules establish the proper procedure for claim construction proceedings. *See* Patent L.R. 4. Under Patent Local Rule 4, claim construction proceeds in an orderly fashion after the parties disclose their asserted claims, infringement contentions, and invalidity contentions.

Second, an assessment of claim construction often requires the consideration of extrinsic evidence—such as expert reports—which are not generally considered on a motion to dismiss for failure to state a claim. "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art in question at the time of the

10

invention." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1345 (Fed. Cir. 2009) (citation omitted). "Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id*. at 1314 (quotation marks omitted). "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id*. (quotation marks and citations omitted).

Third, *even if* the Court adopted a construction favorable to Leica, the Court would still need to assess infringement, which itself is "a question of fact." *Bd. of Regents v. BENQ Am. Corp.*, 533 F.3d 1362, 1367 (Fed. Cir. 2008). Fact disputes, such as the question of infringement, are inappropriate for a Court to resolve on a motion to dismiss, where a court must resolve factual disputes in favor of the plaintiff. *See Manzarek*, 519 F.3d at 1031 ("[A court must] accept factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.").

Along these lines, both the Federal Circuit and this Court have held that a claim construction dispute is not appropriate to resolve on a motion to dismiss for failure to state a claim of infringement. For instance, in *Nalco Co. v. Chem-Mod, LLC*, the Federal Circuit reversed a district court's dismissal of a patent infringement case because the defendants' "objections to [the plaintiff's] proposed claim construction [was] a dispute not suitable for resolution on a motion to dismiss." 883 F.3d 1337, 1349 (Fed. Cir. 2018). In *Nalco*, the district court dismissed the plaintiff's claims because the district court "concluded that the '[accused product] differ[ed] from the [asserted patent claims] in both the location and method of application.'" *Id*. at 1347. On appeal, plaintiff argued that the "district court must have [implicitly] construed" a disputed claim term, which plaintiff argued on appeal "was inappropriate at the Rule 12(b)(6) stage." *Id.* In reversing the district court, the Federal Circuit found that plaintiff's infringement theory rested on a plausible interpretation of the disputed term and that "[d]efendants' objections to [plaintiff's]

11

theory of infringement read like classic *Markman* [claim construction] arguments." *Id.* at 1349. As such, the Federal Circuit concluded that "[d]efendants' arguments boil down to objections to [plaintiff's] proposed claim construction," which the panel held was "not appropriate to resolve . . . on a Rule 12(b)(6) motion, without the benefit of claim construction." *Id.* at 1350.

Similarly, in *Fujitsu Ltd. v. Belkin Int'l, Inc.*, this Court held that "[c]laim construction and infringement analysis should not be resolved on a motion to dismiss." 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011). There, the defendants argued in a motion to dismiss that defendants' product could not plausibly infringe the asserted patent because "in order to infringe the [patent], they must operate three separate and distinct devices." *Id.* at 886. In opposition, plaintiff argued that defendants' "argument rest[ed] on an erroneous construction" of the claims and that infringement could occur "with only a single device." *Id.* In ruling on the motion to dismiss, the Court found that the "[dispositive] issue turn[ed] on claim construction" and that defendants' briefing largely amounted to an argument on the scope of the patent's claims. *Id.* at 889. As such, the Court found that "[i]f the Court were to construe the [patent's] claims at the motion to dismiss stage, it would be starting the process of evaluating the merits of [plaintiff's] case." *Id.* Accordingly, the Court ruled that defendants' motion was "not the proper time to initiate claim construction." *Id.* at 890.

Other district courts have similarly denied motions to dismiss that would require the court to construe claims and resolve questions of infringement. Opp'n at 14–15; *see, e.g.*, *Par Pharm., Inc. v. Hospira, Inc.*, No. 17-944-JFB-SRF, 2018 WL 3343238, at *3 (D. Del. May 11, 2018) ("Because construction of the disputed claim term is critical to the viability of [Plaintiff's] infringement contentions, the court cannot properly render a dispositive decision on infringement prior to the issuance of a Markman ruling in the present case."); *Pressure Specialist, Inc. v. Next Gen Mfg.*, No. 17-CV-6582, 2018 WL 572834, at *5 (N.D. Ill. Jan. 24, 2018) ("[T]he Court will not 'engage in an infringement analysis at the pleading stage' or attempt to analyze—before any claim construction—the scope of the patent or the differences between the [accused product] and Plaintiff's [claim]." (quoting *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16-C-5298, 2017 WL

12

1362036, at *5 (N.D. Ill. Jan. 6, 2017)); *Anglefix Tech, LLC v. Nuvasive, Inc.*, No. 13-CV-983-BEN (RBB), 2014 WL 197736, at *2–3 (S.D. Cal. Jan. 14, 2014) ("[Defendant's] [m]otion must fail because its argument requires this Court to construe key terms in the patent at the pleading stage."); *Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665, 672 (D. Del. 2010) ("While it is true that claim construction is a matter of law to be determined by the Court, the process for properly construing a patent claim is unsuited for a motion to dismiss.").

However, the Federal Circuit has created a narrow exception when an infringement theory rests on an implausible claim construction. Specifically, in *Ottah v. Fiat Chrysler*, the Federal Circuit affirmed a district court's dismissal of a pro se plaintiff's claim of patent infringement. 884 F.3d 1135, 1141–42 (Fed. Cir. 2018). There, the district court had found that the asserted patent contained "no claim that c[ould] be plausibly construed" to cover the defendants' product. *Id.* Specifically, the complaint alleged that the patent's claim, which was to a "book holder," covered the defendants' camera even though the patent "d[id] not mention a camera or recite typical functions or components of a camera." *Id.* at 1141. In affirming the district court, the Federal Circuit held that the "[asserted] claim . . . is explicitly limited to books" and that "the 'book holder' cannot plausibly be construed to include [defendants' device]." *Id.* at 1141–42.

Here, Leica attempts to get around *Nalco* and *Fujitsu* by simply arguing that Michigan's "infringement allegations rest on an unreasonable view of the claim language." *See* Reply at 2. As such, Leica argues that *Ottah* applies to the current case, rather than *Nalco* or *Fujitsu*. *See id.* at 10–11. The Court disagrees.

Contrary to Leica's assertion, Michigan identifies language in the claims and in the specification to argue that the disputed limitation does not require the entirety of the "supercontinuum white light pulse" to reach and excite the fluorophores in the samples. *See* Opp'n at 4–8. Specifically, Michigan argues that "'said supercontinuum white light pulse exciting the plurality of fluorophores of the sample to emit fluorescence' refers to the fact that the light that excites the fluorophores . . . is supplied by, and must originate at, the 'single-source white light generation system.'" *Id.* at 6. Michigan explains that "[t]he plain language of the claims requires

13

a single-source of white light that supplies the light for excitation regardless of whether one or hundreds of wavelengths reach the sample as the purpose of that portion of the invention was to eliminate the need for multiple lasers." *Id.*  At this juncture, the Court cannot agree that it is *implausible* that a person of ordinary skill in the art could understand the limitation's recitation of a "supercontinuum white light pulse exciting the [] fluorophores" to mean that the supercontinuum of white light merely provides the source of light to excite the fluorophores, as Michigan argues, rather than that the full spectrum of light must excite the fluorophores, as Leica argues.  *See* '169 Patent col. 7:45–50.

Accordingly, the instant case is readily distinguishable from *Ottah*.  In *Ottah*, the Federal Circuit found that the patentee's claim was facially implausible because it attempted to stretch a patent claim for a "book holder" to cover a "camera," which was entirely absent and distinct from the patented invention.  *Ottah*, 884 F.3d at 1141–42.  By contrast, Leica merely disputes Michigan's plausible interpretation of a claim term.  Opp'n at 4–8.  Unlike *Ottah*, the instant case presents legal questions as to the interpretation of the supercontinuum white light limitation and factual questions as to whether the SP8 microscopes infringe.  As such, in contrast to *Ottah*, the Court here requires a complete record with which to decide questions of claim construction and infringement.  *Ottah* is inapposite.

Therefore, the Court finds that Leica's motion to dismiss for noninfringement amounts to an objection to Michigan's plausible interpretation of a disputed claim limitation, which the Court finds premature to resolve at this point.  Accordingly, *Nalco* and *Fujitsu* are on all fours with this case.  As a result, as in *Nalco* and *Fujitsu*, the Court declines to construe the scope of the disputed limitation "without the benefit of claim construction."  *Nalco*, 883 F.3d at 1350.  Moreover, because the Court finds that claim construction of the supercontinuum white light limitation is premature, the Court finds that it is unnecessary to assess and weigh the prosecution history of the '169 Patent.  Because the Court does not evaluate the '169 Patent's prosecution history at this

time, the Court DENIES Leica's motion to take judicial notice of the prosecution history.[3]  ECF No. 17-2.

In sum, because Leica does not dispute that the SP8 microscopes infringe under Michigan's interpretation of the supercontinuum white light limitation, and because the Court finds Michigan's interpretation of this limitation plausible, the Court concludes that Michigan has adequately pled literal direct infringement.  Accordingly, the Court DENIES Leica's motion to dismiss Michigan's claim of literal direct infringement.

### 2. Infringement Under the Doctrine of Equivalents

The Court next turns to Leica's argument that Michigan fails to state a claim of infringement under the doctrine of equivalents.  Specifically, Leica argues that "any allegation of infringement under the doctrine of equivalents is precluded by prosecution history estoppel."  Mot. at 21.  However, "[p]rosecution history estoppel applies as a limitation to the doctrine of equivalents after the claims have been properly interpreted *and no literal infringement is found.*" *GE Co. v. Nintendo Co. Ltd.*, 179 F.3d 1350, 1362 (Fed. Cir. 1999) (quoting *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985)).  As discussed above, courts regularly decline to reach arguments about infringement under the doctrine of equivalents where literal infringement has been sufficiently established.  *See, e.g.*, *Cheese Sys., Inc.*, 725 F.3d at 1349.  Accordingly, because the Court found that Michigan sufficiently pleaded literal infringement, the Court need not reach any of Leica's arguments concerning infringement under the doctrine of equivalents.

Accordingly, the Court DENIES Leica's motion to dismiss Michigan's claim of direct infringement under the doctrine of equivalents.

---

[3] The Court also notes that Michigan filed an objection to Leica's inclusion of and reliance on a provisional patent application in Leica's reply brief.  *See* ECF No. 46.  However, because the Court denies Leica's request for judicial notice as to the '169 Patent's prosecution history, and because the provisional application is part of the '169 Patent's prosecution history, the Court need not separately address Michigan's objection.  *See, e.g.*, *L.A. Biomedical Research Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly Co.*, 849 F.3d 1049, 1063 (Fed. Cir. 2017) (assessing a provisional patent application as part of a patent's prosecution history).  Accordingly, Michigan's objection is OVERRULED.  Similarly, Leica's motion seeking review of Michigan's objection is DENIED as moot.  ECF No. 50.

### B. Indirect Infringement

Michigan alleges that Leica indirectly infringes the '169 Patent through induced infringement and contributory infringement. *See* Compl. ¶¶ 40–43. However, Leica's arguments regarding indirect infringement merely restate Leica's arguments regarding direct infringement, and Leica does not offer any independent reason why the Court should dismiss Michigan's remaining claims. *See* Mot. at 23 ("Because the Complaint does not state a plausible claim for direct infringement for the reasons discussed above, there can be no indirect infringement as a matter of law."). Therefore, because the Court already rejected Leica's arguments concerning direct infringement as discussed above, the Court DENIES Leica's motion to dismiss with respect to indirect infringement.

### C. Willful Infringement

Finally, Michigan alleges that Leica's direct and indirect infringement warrant enhanced damages because the infringement was willful. *See* Compl. ¶¶ 46–52. Leica merely argues that Michigan's willful infringement claim fails "[b]ecause the Complaint does not state a plausible claim for direct infringement." *See* Mot. at 23 ("[I]t is axiomatic that in the absence of infringement there can be no willful infringement."). Therefore, because the Court already rejected Leica's arguments concerning direct infringement as discussed above, the Court DENIES Leica's motion to dismiss with respect to willful infringement.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Leica's motion to dismiss.

**IT IS SO ORDERED.**

Dated: April 30, 2020

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge